STATE OF CONNECTICUT *v.* LORENZO MCFARLANE
(AC 25159)

Lavery, C. J., and DiPentima and Hennessy, Js.

Argued January 4—officially released March 22, 2005

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Stephen J. Sedensky III*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Lorenzo McFarlane, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the first degree in violation of General Statutes §§ 53a-122 (a) (2) and 53a-119, burglary in the third degree in violation of General Statutes § 53a-103 (a), and conspiracy to commit the crimes of larceny in the first degree and burglary in the third degree in violation of General Statutes §§ 53a-48, 53a-

122 (a) (2) and 53a-103 (a). On appeal, the defendant claims that (1) the trial court improperly admitted evidence of uncharged misconduct, (2) the court improperly charged the jury under *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), and (3) there was insufficient evidence to support the conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 31, 2001, the defendant, James Samperi, James Zulawski, Julie DiDonato and Ralphella DiPalma met and discussed breaking into the Emptees Redemption Center (Emptees) in Orange. After the discussion concluded, at approximately 12:30 a.m., the defendant, Samperi and Zulawski drove to Emptees in Samperi's car. There, the defendant acted as a lookout while Samperi and Zulawski removed the hinges from the front door of Emptees, went inside and seized the safe and strongbox and returned to the car.[1] Subsequently, the defendant was present when the safe was forced open, and he received a one-third share of the approximately $19,000 it contained. Further facts will be set forth as necessary.

## I

The defendant first claims that the court improperly admitted evidence of uncharged misconduct. Specifically, the defendant objected to the admission of evidence of his participation in burglaries at the KB Toy store in the Westfarms Mall in Farmington on December 9, 2001, the B. Dalton Bookstore at the Westfield Shoppingtown Connecticut Post Mall in Milford on December 24, 2001, and the Life Uniform Store at the Westfield Shoppingtown Mall in Enfield on January 27, 2002. The defendant argues that those alleged incidents were not similar enough to the Emptees burglary at issue in this

---

[1] All of the conduct that occurred inside Emptees was recorded on the store's surveillance tape and corroborated by Samperi.

case to be considered signature type conduct and, as such, were inadmissible. The defendant further argues that the uncharged misconduct evidence was more prejudicial than probative and that it should not have been admitted. We disagree.

"The admission of evidence of . . . uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . To be admissible under the Connecticut Code of Evidence, the uncharged misconduct must be relevant . . . to one of the exceptions . . . to the general bar against uncharged misconduct. . . . If it is relevant to one of the exceptions, then its probative value . . . must be greater than its prejudicial effect. . . . Section 4-5 (b) [of the Connecticut Code of Evidence] specifies that uncharged misconduct may be admissible to prove, inter alia, intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." (Internal quotation marks omitted.) *State* v. *Holliday*, 85 Conn. App. 242, 249, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004).

Here, the evidence was relevant to intent. In *State* v. *Amaral*, 179 Conn. 239, 425 A.2d 1293 (1979), our Supreme Court stated: "Under a charge of possession with intent to sell, the fact that in the past the defendant had been a seller of the drug would tend to characterize the nature of his possession of the drug at the time of the alleged offense." Id., 244–45. Similar to the situation in *Amaral*, here, the fact that the defendant previously had served as a lookout for the other codefendants in similar burglaries made it more likely that he was serv-

ing as a lookout during the crimes at issue and was not an innocent bystander as he claimed.

The defendant argues that because the Emptees burglary involved a freestanding building and the uncharged misconduct evidence involved burglaries at malls, the evidence was too dissimilar, and should not have been admitted. "The high degree of similarity required for admissibility on the issue of identity is not required for misconduct evidence to be admissible on the issue of intent." *State* v. *Henry*, 41 Conn. App. 169, 178, 674 A.2d 862 (1996); see also *State* v. *Faria*, 47 Conn. App. 159, 172, 703 A.2d 1149 (1997) (lesser degree of similarity required when other misconduct evidence used to show motive, intent), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998). Here, the same individuals had the same roles in burglaries of businesses throughout the state over approximately a six month period. Despite the fact that the subsequent burglaries occurred at malls and not at freestanding businesses, they bore a sufficient similarity to the charged crimes to be admissible on the issue of the defendant's intent.

The evidence also was more probative than prejudicial. The defendant argues that the similarity of the crimes made the uncharged misconduct more prejudicial than probative because the jury would be more likely to view the misconduct as propensity evidence. That argument was disposed of in cases such as *State* v. *Amaral*, supra, 179 Conn. 244, in which our Supreme Court determined that the mere fact that the uncharged misconduct and the charged crime are similar does not make the uncharged misconduct evidence overly prejudicial. The defendant's theory that he was present at the scene but was unaware that a burglary was going to take place made evidence that tended to show his intent highly probative. Although some prejudice naturally flows from such evidence, that evidence was not of the variety that would shock the jury or inflame its

passions. Moreover, any prejudice was minimized by the court's limiting instruction to the jury on the proper use of the misconduct evidence.[2] See *State* v. *Anderson*, 86 Conn. App. 854, 870, 864 A.2d 35 (2005) (jury presumed to follow court's instructions absent clear evidence to contrary). The court did not abuse its discretion when it admitted the evidence of the defendant's uncharged misconduct.[3]

## II

The defendant next argues that the court improperly instructed the jury that it could find him guilty on the basis of a theory of conspiratorial liability under *Pinkerton* v. *United States*, supra, 328 U.S. 647–48. The defendant argues that his role in the burglary was so attenuated and remote that to apply the *Pinkerton* rationale would be unfair. We disagree.

[2] The court instructed the jury: "Evidence of other acts of misconduct. The evidence offered by the state of other acts of misconduct by the defendant is not being admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts. Such evidence is being admitted solely to establish—solely to show or establish intent, identity, motive, common plan or scheme or a system of criminal activity. You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity.

"You may consider such evidence if you believe it and further find [that] it logical[ly], rational[ly] and conclusively supports the issue for which it is being offered by the state, but not as it may bear here on those issues. But only as it may bear here on those issues, I'm sorry.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it does not logically, rationally and conclusively support the issues for which it is being offered by the state, namely, intent, identity, motive, common plan or scheme or a system of criminal activity, then you may not consider that testimony for any purpose because it may be—may predispose your mind to believe that the defendant may be guilty of the offense here charged merely because of the alleged other misconduct."

[3] Because we conclude that the evidence was properly admitted to prove the issue of the defendant's intent, we need not address the alternate grounds for admission proffered by the state, i.e., to prove a continuing system of criminal activity or a common scheme.

"[A] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 20, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

"Under the *Pinkerton* doctrine . . . a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Citation omitted; internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 484, 853 A.2d 478 (2004). Although our Supreme Court has stated that "a factual scenario may be envisioned in which the nexus between the defendant's role in the conspiracy and the illegal conduct of a coconspirator is so attenuated or remote, notwithstanding the fact that the latter's actions were a natural consequence of the unlawful agreement, that it would be unjust to hold the defendant responsible for the criminal conduct of his coconspirator"; (internal quotation marks omitted) *State* v. *Coltherst*, 263 Conn. 478, 493, 820 A.2d 1024 (2003); this is not such a case.

Here, evidence was submitted that the defendant was present when the burglary was planned, served as a lookout during the commission of the crimes and received a one-third share of the proceeds thereof. As in *State* v. *Garner*, supra, 270 Conn. 458, the defendant participated in the planning of the crimes, was present at the scene with knowledge that the crimes were being committed and acted as a lookout. The defendant's

participation, thus, was not so attenuated or remote that it was unjust to hold him responsible for his coconspirators' criminal conduct. The court therefore properly charged the jury under *Pinkerton*.

## III

The defendant finally claims that there was insufficient evidence to support his conviction. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 270, 864 A.2d 666 (2004).

Because we concluded that the *Pinkerton* instruction was properly given[4] and there is no dispute as to whether the crimes in question were committed by Samperi and Zulawski, competent evidence that the defendant conspired to commit the crimes with Samperi and Zulawski would provide a sufficient basis for the jury to find the defendant guilty on all counts.[5] As discussed in part I, the court properly admitted evidence of the defendant's participation in three other burglaries as evidence of his intent on the night in question. Fur-

---

[4] See part II.

[5] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

thermore, the state presented the testimony of DiDonato, one of the coconspirators, which described the defendant's role in the planning and commission of the crime. DiDonato further testified that the defendant received a one-third share of the proceeds.

The defendant argues that Samperi's testimony contradicted that of DiDonato, and that DiDonato had a strong motivation to testify against the defendant. This court will not revisit credibility determinations. "Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Harris*, 85 Conn. App. 637, 654, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

Defense counsel elucidated DiDonato's motivation and bias on cross-examination and brought out the contradictory nature of the witness' testimony in closing argument. The jury was well aware of those facts when it made its decision. Construing the evidence in the light most favorable to sustaining the verdict and deferring to the jury's credibility determinations, we conclude that there was sufficient evidence to support the defendant's conviction.

The judgment is affirmed.

In this opinion the other judges concurred.