# STATE OF CONNECTICUT *v.* GREGORY ERHARDT
## (AC 25015)

Lavery, C. J., and Dranginis and Harper, Js.

Argued May 26—officially released August 23, 2005

*G. Douglas Nash*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Warren C. Murray*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Gregory Erhardt, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) and threatening in the second degree in violation of General Statutes § 53a-

62 (a) (1).[1] On appeal, the defendant claims that the trial court improperly (1) admitted evidence of prior misconduct, (2) denied his request to redact a prejudicial statement from a prosecution exhibit, (3) permitted the state to cross-examine him with respect to prior convictions and (4) instructed the jury on the element of intent as to the assault and threatening charges. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Susan Meehan, and the defendant rented a house together at 51B Ironworks Hill Road in Brookfield. On the evening of May 27, 2003, the defendant became angry with the victim when she heated soup for him using the microwave instead of the stove. He got a knife from the kitchen and put it at the victim's throat, telling her, "I can take you out in a heartbeat."

The victim was frightened, and she tried to calm the defendant by using a code word, which had worked a few times in the past when the defendant went "crazy like this." This did not work, and the defendant took the knife and cut the victim on the left side of the face. He then entered the bathroom. The victim almost called 911, but she was too scared, fearing that he would kill her if he knew she was calling.

The defendant emerged from the bathroom and retrieved the knife again. He kept putting it to the victim's throat and telling her that he could kill her. Eventually, he put down the knife, and the victim was able to get a towel to hold against her bleeding face. There was "blood everywhere," and the victim asked the defendant if she could go to a hospital. He agreed after forcing her to remove her bloody denim jacket.

The victim left the house and went to her workplace, a nearby bowling alley. There, she told her coworkers

[1] The defendant also was charged with, but not convicted of, interfering with an officer in violation of General Statutes § 53a-167a.

that the defendant was responsible for her injury. One of the employees called the police, and the victim was taken to the hospital, where she received five stitches to close the wound to her face.

After her release from the hospital, the victim returned to her house, which was surrounded by police officers who were trying to convince the defendant to come out of the house. One of the officers approached the victim and asked if she was willing to go to the police station and give a statement. She agreed and was able to give a signed, sworn statement describing the stabbing and the events leading to it.

At trial, the victim recanted the version of events in her statement. Instead, she testified that she injured herself while attempting to scrape painted flowers off a hutch with a pocketknife. The defendant also testified in his defense, corroborating the victim's new story. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly admitted evidence of his prior misconduct. Specifically, he takes issue with incidents mentioned in the victim's statement to the police, including general statements regarding his violence toward the victim and his threatening behavior, a head-butting incident and an incident in which he hit the victim in the head with the blunt end of a butcher knife. We conclude that this evidence was admitted properly.

The following additional facts are necessary to the resolution of the defendant's claim. Before trial, the defendant filed a motion in limine, asking the court to exclude evidence of his prior misconduct. The state responded that it intended to introduce evidence of two prior assaults against the victim that she had related to the police in her written statement the night of the

incident in question. The first incident, in which the defendant gave the victim a black eye by head-butting her, occurred approximately five weeks before the stabbing. The victim also described a second incident in which the defendant hit her over the head with the blunt end of a butcher knife. The victim could not recall the date of that event, but stated that it occurred close in time to the head-butting incident.

The state argued to the court that this evidence was admissible under the intent exception to the uncharged misconduct exclusionary rule. The defendant contended that this misconduct did not fit within the exception and was too remote in time, extraneous and too prejudicial to be admissible. The court declined to rule immediately on the defendant's motion and continued the matter until the next day.

The next day at trial, the victim was the prosecution's second witness. She testified that she had caused her injury and that the defendant had not stabbed her. To contradict the victim's testimony, the state offered, as substantive evidence under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), her written statement to the police, in which she claimed that the defendant had caused her injury. The defendant objected to this exhibit on the ground that the victim was intoxicated at the time she gave the statement and, thus, did not have personal knowledge of its contents. The objection was overruled by the court, and the statement was admitted into evidence as a full exhibit.

In her *Whelan* statement, the victim stated: "This is not the first time [the defendant] has hurt me. About two months or so, around Easter, [he] took a butcher knife and hit me on the head with the blunt end. I did not report this, but it was about two or three weeks ago. I'm not sure when [he] head-butted me giving me

a black eye. I didn't report it, but the police found out. When the Brookfield police officers came to the house, I did not tell them what happened. They knew I was lying. I was afraid to tell them what happened.

"He is and has been good to me, but in the last three months, he has become violent. He just goes off, and then will calm down. I cannot control him or make him stop when he's like that. I'm afraid for my life when he is like this." In her statement, the victim also stated that the defendant had threatened her in the past.

The state later questioned the victim about the head-butting incident. The defendant objected to this line of questioning because the misconduct did not meet any of the exceptions to the prior uncharged misconduct exclusionary rule. The state again argued that the evidence fit within the intent exception. The state also stated its intention to introduce testimony of one of the police officers who responded to a call regarding the head-butting incident. The court overruled the defendant's objection and held that both of the prior uncharged misconduct incidents were admissible on the issue of intent. The court also stated that it would give a limiting instruction regarding the use of prior uncharged misconduct evidence.

Officer Jameson Zaloski later testified that in April, 2003, he responded to a domestic violence complaint at the victim's and the defendant's house. The victim had a black eye and possibly a bump on the forehead. She told the officer that she injured herself the previous day by walking into her attic stairs. The officer testified that he did not believe the victim's statement because her injuries did not appear consistent with her explanation.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . .

Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . .

"Our standard of review on such matters is well established. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . The problem is . . . one of balancing the actual relevancy of the other crimes evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Sawyer*, 74 Conn. App. 743, 747–48, 813 A.2d 1073, cert. granted on other grounds, 263 Conn. 908, 819 A.2d 842 (2003).

In this case, we agree with the court that the evidence was relevant to the intent exception. To convict the defendant of assault in the second degree, the state was required to prove that he intended to cause physical

injury to the victim.[2] General Statutes § 53a-60 (a). "Intent, or any other essential element of a crime, is always at issue unless directly and explicitly admitted before the trier of fact." *State* v. *Baldwin*, 224 Conn. 347, 356, 618 A.2d 513 (1993). "Because intent is almost always proved, if at all, by circumstantial evidence, [other] misconduct evidence, where available, is often relied upon." Id., 355.

The defendant argues that the evidence of incidents of prior misconduct was too dissimilar to the stabbing incident and should not have been admitted. He argues that the intent underlying the incidents is not identical, as required for the evidence to be admissible. We have recently held in *State* v. *McFarlane*, 88 Conn. App. 161, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005), that "[t]he high degree of similarity required for admissibility on the issue of identity is not required for misconduct evidence to be admissible on the issue of intent. *State* v. *Henry*, 41 Conn. App. 169, 178, 674 A.2d 862 (1996); see also *State* v. *Faria*, 47 Conn. App. 159, 172, 703 A.2d 1149 (1997) (lesser degree of similarity required when other misconduct evidence used to show motive, intent), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998)." (Internal quotation marks omitted.) *State* v. *McFarlane*, supra, 165.

In this case, prior incidents of physical violence by the defendant toward the same victim are relevant and material to indicate that he intended to cause the victim physical injury in the stabbing incident. They are similar acts that tend to show a likelihood that the defendant intended physically to harm the victim. These actions

---

[2] The defendant argues that intent was not an issue in this case because he testified that the victim injured herself and that intent was not a focus of the state's case. That argument is meritless. The defendant did not admit that he had an intent to cause physical injury; therefore, this was a contested issue that the state had to prove, and evidence regarding that issue was relevant and material.

were close in time, being within two months of the incident underlying the criminal trial.

The defendant maintains that there were too few facts regarding the prior misconduct for the evidence to be relevant and for allowable inferences to be drawn. We disagree. That there are few facts pertains to the weight that should be given the evidence, not to its admissibility. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 679–80, 830 A.2d 193 (2003).

The defendant also argues that this lack of specificity means that his intent may have been negligence or recklessness rather than an intent to cause physical injury. In her *Whelan* statement, illustrating the defendant's violent acts toward her, the victim stated that the defendant head-butted her, hit her with the blunt end of a knife, threatened her and was violent toward her. This information was corroborated by the officer's testimony that the victim had a black eye that did not seem consistent with her story of walking into attic stairs. Under these circumstances, it is hard to see that these actions could be anything but intentional. This evidence was relevant to proving the defendant's intent, especially given that the victim recanted her statement and provided an explanation that she accidentally stabbed herself.

The evidence also was more probative than prejudicial. "[A]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the

defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Eastwood*, 83 Conn. App. 452, 465, 850 A.2d 234 (2004).

In this case, the court conducted a full hearing outside the presence of the jury in which it allowed the defendant to argue against the offer of proof and, after considering the parties' arguments, determined that the probative value of the prior misconduct evidence outweighed its prejudicial tendency. Furthermore, the court lessened the potential prejudice to the defendant by repeatedly giving the jury limiting instructions as to the use of this evidence.[3] The care with which the court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion. See *State* v. *Wild*, 43 Conn. App. 458, 464, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). We conclude that the court did not abuse its discretion in admitting the evidence of prior misconduct as relevant to the issue of the defendant's intent.

II

The defendant next claims that the court improperly denied his request to redact a prejudicial statement from a prosecution exhibit. We disagree.

Certain additional facts are necessary to our resolution of the defendant's claim. As part of the state's case-in-chief, J. B. Halstead, the dispatcher for the Brookfield police department, testified that it was his job to monitor police transmissions. On May 27, 2003, he received calls from Zaloski regarding an incident at 51B Ironworks Road. Halstead further testified that he had

---

[3] The court gave three limiting instructions regarding the prior misconduct evidence: (1) after Zaloski's testimony; (2) during the jury instructions; and (3) before the case was given to the jury in response to the defendant's request for a reinstruction.

brought to court an audiotape recording of his conversations with Zaloski and a telephone call to the defendant. This was offered into evidence as a full exhibit. Defense counsel stated that he had no objection to the exhibit. The exhibit was admitted into evidence and then played for the jury.

After the state had rested, but before the defendant presented his case, defense counsel requested a transcript of the recording because parts of it were hard to understand. The state did not object, and the court ordered that the defendant should be given access to the tape to make his own transcript.

After the court had finished giving the jury instructions, the defendant requested that the court redact a part of the tape in which Halstead stated that the defendant had "a long history of interfering [and] assault," and another officer stated that the defendant is "a guy with interfering." After argument from both parties, the court agreed with the state that the tape had already come into evidence without objection and denied the defendant's request to redact the tape. At the defendant's request, the court did repeat its limiting instruction regarding misconduct evidence for the jury.

During deliberations, the jury asked for a tape recorder so that it could hear the audiotape again. The defendant reiterated his concerns regarding the comments on the tape. The court responded that it already had ruled on the defendant's request and that it thought the jury had a right to listen to the tape.

The defendant initially claims that the court improperly failed to exercise its discretion and that such failure mandates a reversal of the conviction. He further claims that if we conclude that the court, in fact, exercised its discretion, it abused that discretion because the prejudice engendered by the evidence far outweighed any probative value. The state claims that the court exer-

cised its discretion and balanced the competing interests in arriving at a proper decision. We agree with the state.

"The admissibility of . . . evidence must be entrusted to the sound discretion of the trial judge. . . . This duty is not discharged at the close of the state's evidence, but remains throughout the evidence phase of trial. The trial court has broad discretion to determine the admissibility of evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Dunbar*, 51 Conn. App. 313, 322, 721 A.2d 1229 (1998), cert. denied, 247 Conn. 962, 724 A.2d 1126 (1999).

The court exercised its discretion in refusing to redact the statements on the tape.[4] The court agreed with the state's arguments on this issue. The prosecutor had argued that "[the state's] position would be that at this point, [the tape is] in. . . . I did give [defense counsel] the tape to play with his client, and he did play [it] with his client. And he also asked us to—where he could create the transcript . . . . At this point, the jury can—the jury has heard the charge. I would argue [that] it's too late to take it out."

We next address whether the court abused its discretion. The defendant claims that the statement should have been excluded because it was highly prejudicial and irrelevant. We disagree.

It is well settled that "[t]he trial court's ruling on the admissibility of evidence is entitled to great deference.

[4] The defendant contends that the court failed to exercise its discretion by summarily dismissing his request and failing to consider the compelling circumstances surrounding his failure to object to the admission of the tape at an earlier time. He argues that the court did not use the correct standard when determining whether to open the evidence to redact the statements on the tape. We disagree. The court listened to the arguments of both parties, including the defendant's reasons for a late objection, evaluated the arguments and ruled that it would not redact a tape that had already been given to the jury, but did agree to give another limiting instruction.

. . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . .

"In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value." (Citations omitted; internal quotation marks omitted.) *State* v. *Dunbar*, 51 Conn. App. 323–24.

We conclude that any prejudice suffered by the defendant was harmless. The jury was only given the audio version of the tape, which was of poor quality and hard to understand. In fact, it was only after a transcript was created that the defendant even knew that the statements in question were on the tape. Additionally, the jury already had evidence of the defendant's history of violence against the victim. The jury also was aware that the defendant had five prior felony convictions. Given that evidence, it is unlikely that the officer's brief and somewhat inaudible comments affected the jury's verdict.

### III

The defendant contends that the court abused its discretion by permitting the state to cross-examine him with respect to five prior convictions. He maintains that the convictions were irrelevant for impeachment

purposes because they were either too remote in time or did not indicate untruthfulness. We disagree.

Before trial, the defendant filed a motion in limine requesting that the court preclude the state from introducing evidence of his fourteen prior criminal convictions to impeach his credibility. The court deferred its ruling on the motion until the conclusion of the state's case-in-chief.

The defendant renewed his motion in limine after the state rested its case. In cross-examining the defendant, the state planned to introduce convictions for the following felonies: (1) a 1999 conviction for possession of narcotics, (2) a 1987 conviction for robbery in the first degree and larceny in the first degree, (3) a 1981 conviction for larceny in the second degree, (4) a 1981 conviction for escape from custody, (5) a 1981 conviction for assault in the first degree and (6) a 1977 conviction for attempt to commit robbery in the second degree.

The court ruled that "as to the felonies regarding the narcotics, violence, and the escape, I think the naming of those felonies would be overly prejudicial. However, I will allow . . . the state to ask whether the defendant has been convicted of a felony regarding those . . . convictions, I should say. And indicate to the jury that a felony is a crime for which the penalty is more than a year." The court also held that the larceny convictions involved an indication of a lack of veracity and that it would allow the state to inquire as to the named charge on those particular convictions. The court found that one of the defendant's misdemeanors did indicate a lack of veracity, but the state represented that it would not question the defendant on that conviction. The court would not allow the state to introduce any of the defendant's other convictions, most of which were misdemeanors.

The defendant asked the court to reconsider its ruling in regard to the felonies in excess of ten years old. He further asked that all of the felonies be unnamed felonies. The state responded that it would not ask about the 1977 conviction for attempt to commit robbery and would refer to the other convictions as unnamed felonies. The court accepted the state's concessions and declined to revisit its ruling.

On cross-examination, the state asked the defendant about his criminal record, and he admitted that he had five felony convictions, three in 1981, one in 1987 and one in 1999. In its closing arguments, the state argued that these convictions had "a significant impact on [the defendant's] ability to tell the truth and to be a truthful person with the jury." The court instructed the jury that the felony convictions could be used only to assess the defendant's credibility. The charge was later repeated to the jury at the defendant's request.

As a preliminary matter, "evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. . . . There are, however, several well recognized exceptions to this rule, one of which is that [a] criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. . . . In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value. . . .

"Our Supreme Court has identified [t]hree factors [that] should be examined to determine whether a prior criminal conviction . . . has been [properly] admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and

(3) the remoteness in time of the prior conviction. . . . The trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 261–62, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002); see also Conn. Code Evid. § 6-7 (establishing three-pronged balancing test).

In this case, the court considered each of those factors. The defendant argues that the convictions were too prejudicial. We disagree.

We note that court took the prudent course by allowing the state to mention that the defendant had been convicted of unspecified crimes carrying a penalty of more than one year, at a certain time and place. "The defendant's character, from which the jury might draw an inference of dishonesty, would thus be sufficiently impugned without the extraordinary prejudice that sometimes follows when the prior crime is specifically named." *State* v. *Geyer*, 194 Conn. 1, 16, 480 A.2d 489 (1984).

Also, the convictions did have significance regarding the defendant's truthfulness. The two larceny convictions reflected directly on the defendant's credibility. "[Our Supreme Court] has recognized that crimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements. . . . [I]n common human experience acts of deceit, fraud, cheating, or stealing . . . are universally regarded as conduct which reflects on a [person's] honesty and integrity . . . ." (Internal quotation marks omitted.) *State* v. *Ciccio*, 77 Conn. App. 368, 387, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251

(2003). As for the three remaining convictions, although they are less probative of credibility than those such as perjury or fraud, "we have noted the legislative judgment that records of [all] crimes involving sentences of more than one year affect the credibility of a witness . . . ." (Internal quotation marks omitted.) *State* v. *Rivera*, 221 Conn. 58, 74, 602 A.2d 571 (1992).

"As to the third criterion, remoteness in time of the prior convictions, we note that although no absolute time limit has been adopted, a ten-year limit has been suggested. . . . The ultimate discretion whether to allow into evidence a conviction greater than ten years old rests with the court." (Citation omitted.) *State* v. *Vitale*, 76 Conn. App. 1, 8, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003); see also *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 305–16, 852 A.2d 703 (2004) (remoteness in time merely one factor in three-pronged balancing test and fact that conviction more than ten years old simply increases weight carried by that prong). The 1999 conviction was well within the ten year time limit. Because two of the prior convictions involved larceny, which reflects directly on truth or veracity, we cannot conclude that the court abused its discretion in allowing those two convictions to be used for purposes of impeachment.

As to the two other convictions, given that the court had ultimate discretion in deciding to allow these felonies to be used and that they were unnamed felonies, we cannot find that the court's decision constituted reversible error. The defendant has not persuaded this court that any error in allowing these convictions to be used affected the result of the trial. There was enough evidence to convict the defendant without these convictions. Also, we presume that the jury followed the court's instructions; see *State* v. *Peeler*, 267 Conn. 611, 638, 841 A.2d 181 (2004); and the jury was given a limiting instruction on how to use the information.

## IV

The defendant also maintains that the court improperly instructed the jury regarding the intent element of the assault and threatening charges by reading the entire statutory definition contained in General Statutes § 53a-3 (11).[5] Specifically, the defendant argues that the court's reading of the entire statutory definition of intent, including the portion that provides that a person acts intentionally when his conscious objective is "to engage in such conduct," confused and misled the jury. He claims that the court's instructions improperly permitted the jury to return a verdict of guilty without finding that the defendant possessed the specific intent to cause a specific result. We disagree.

The defendant concedes that he did not properly preserve his claim for appeal by taking exception to the charge as given. See Practice Book § 42-16. He seeks review under the doctrine set forth in State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the defendant's claim pursuant to Golding because the record is adequate, and an improper instruction on an element of an offense is of constitutional magnitude. See State v. Austin, 244 Conn. 226, 235, 710 A.2d 732 (1998).

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in

---

[5] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 63 Conn. App. 529, 534, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

"It has become axiomatic, through decisional law, that it is improper for a court to refer in its instruction to the entire definitional language of § 53a-3 (11), including the intent to engage in conduct, when the charge relates to a crime requiring only the intent to cause a specific result." *State* v. *Sivak*, 84 Conn. App. 105, 110, 852 A.2d 812, cert. denied, 271 Conn. 916, 859 A.2d 573 (2004). In most of the cases involving this issue, "the conviction of the crime requiring a specific intent was upheld despite the improper charge as to intent because the trial court also, in other portions of the charge, gave a proper statement of the intent element so that the instruction, although erroneous, was not harmful beyond a reasonable doubt, that is, it did not mislead the jury." Id., 111. In prior cases, the courts have counted the number of times the intent charge was proper, as opposed to the number of times it was improper. See id., 112. Here, the court stated on at least six separate occasions that the intent required for a conviction of assault in the second degree was the intent to cause physical injury. The court also repeatedly instructed the jury on the threatening charge that the state must prove beyond a reasonable doubt that the defendant intended to place the victim in fear of imminent and serious physical injury.

Viewing the instruction in its entirety, we conclude that it was not reasonably possible that the jury was misled by the extraneous intent to engage in conduct language of the statute. The court repeatedly instructed the jury with proper intent instructions. Therefore, the defendant cannot satisfy the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.