STATE OF CONNECTICUT *v.* NAZRA MUNGROO
(AC 27603)

Gruendel, Harper and Mihalakos, Js.

Argued September 10—officially released December 4, 2007

*Jodi Zils Gagne*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Nazra Mungroo, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the first degree in violation of General Statutes § 53a-122ʹ(a) (2) and falsely reporting an incident in the second degree in violation of General Statutes § 53a-180c (a) (3). The defendant claims that the trial court improperly (1) denied her motion for a judgment of acquittal, (2) precluded her from asserting a missing witness argument, (3) excluded certain evidence concerning the timing of her arrest and (4) imposed an illegal sentence. We agree that the sentence imposed by the court is illegal, reverse the judgment on this limited ground and remand the case for resentencing. We affirm the judgment in all other respects.

On the basis of the evidence presented at trial, the jury reasonably could have found that the defendant, while an employee of a hotel in Hartford, wrongfully took approximately $66,000 in checks and $38,000 in cash from the hotel and appropriated the property to herself during a staged robbery. Following her larcenous conduct and her attempt to conceal the same, the defendant reported false information to law enforcement agents investigating the theft of this property. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied her motion for a judgment of acquittal as to both crimes of which she stands convicted. We disagree.

At the close of the state's case-in-chief, the defendant's attorney orally moved for a judgment of acquittal. The defendant's attorney did not argue that the evidence was insufficient as to any specific element or elements of the crimes charged, but argued that the evidence was insufficient to permit a finding of guilt as to either crime in general. The state opposed the motion and summarized its view of the evidence presented. The court, noting its obligation to view the evidence in the light most favorable to the state, summarily denied the defendant's motion. Immediately thereafter, the defense rested its case.

As a preliminary matter, the defendant argues that the evidence was insufficient because it was circumstantial, rather than direct, in nature. This argument is not persuasive. "The law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned. If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." *State* v. *Smith*, 138 Conn. 196, 200, 82 A.2d 816 (1951); see also *State* v.

*Davis*, 283 Conn. 280, 330, 929 A.2d 278 (2007); *State* v. *Fagan*, 280 Conn. 69, 80, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007); *State* v. *Padua*, 273 Conn. 138, 147, 869 A.2d 192 (2005); *State* v. *Gaynor*, 182 Conn. 501, 506 n.3, 438 A.2d 749 (1980).

The defendant also argues that the evidence was insufficient "because the police failed to investigate the possibility of any other perpetrator for [these crimes] . . . ." The defendant likewise argues that "the police had more important cases to investigate and did not spend enough time on this case to determine if there were [other hotel employees] who could have also committed this robbery, other than [she]." The defendant devotes a major portion of her argument to discussing portions of the evidence presented at trial and attempting to persuade this court that the jury should have disagreed with the state's interpretation of the evidence in favor of her interpretation of the evidence. Repeatedly, the defendant argues that she was "a victim of circumstance" and that there are "many explanations" for evidence that the state argued was probative of her guilt. In her appellate brief, the defendant argues that there are "plausible" ways to interpret the evidence so as to reach a verdict of not guilty and sets forth such explanations of the evidence. The defendant argues: "[W]hen examining all [of the] circumstantial evidence individually, it becomes apparent that there are easy explanations [of the] facts, other than blaming the defendant for this crime. Therefore, the jury should not have simply believed this circumstantial evidence and concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt."

The defendant's arguments reflect a flawed view of this court's role in evaluating sufficiency of the evidence claims. As stated by our Supreme Court: "In reviewing the sufficiency of the evidence to support a criminal

conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence that it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found

credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 283 Conn. 329–30.

The record reflects that the defendant's attorney availed himself of many opportunities to set forth an interpretation of the evidence that was favorable to the defendant's case. The defendant's attorney thoroughly critiqued the state's theory of the case. Thus, the defendant's attorney raised most, if not all, of these arguments concerning the inferences to be drawn from the evidence before the appropriate body—the jury that was empaneled to resolve the factual issues in this case.

The defendant does not argue necessarily that the evidence and inferences reasonably drawn therefrom were insufficient to support the verdict, but rather that it would have been reasonable for the jury to draw inferences from the evidence that were consistent with a finding of her innocence. The jury was in a vantage point superior to ours to evaluate the evidence before it, and we decline the defendant's invitation to reexamine the evidence in an exercise of second-guessing the inferences drawn by the jury. "[T]he finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." *State* v. *Conde*, 67 Conn. App. 474, 490, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002); see also *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984). We have reviewed the evidence and conclude that a reasonable view of the evidence, consistent with a finding of guilt, amply supports the verdict returned by the jury.

## II

The defendant next claims that the court violated her right to make a closing argument by precluding her from asserting a missing witness argument during closing argument. We disagree.

The following additional facts underlie the defendant's claim. After the parties rested their cases, and prior to oral argument, the defendant's attorney asked the court for permission to make a missing witness argument concerning two persons who had not testified. The defendant's attorney identified one of these persons as an unnamed hotel employee who, according to the evidence, was in training at the hotel at or about the time that the events in question occurred. The other person was identified as Lawrence Wagner. The evidence supported a finding that shortly before the events in question on the evening of March 3, 2002, the defendant created a key card for a hotel room that was paid for with a transferable gift certificate that had been issued to Wagner. Months after the incident, a hotel employee found some of the property taken during the robbery, namely a bank ledger and torn checks, in this room. On the basis of other evidence admitted at trial, the state argued that it was not customary for the defendant to have created any key cards and that the circumstances under which she had checked in the guests that stayed in this room were highly suspect. The state also argued that during the defendant's subsequent conversations with the police, her specific recollection of these guests and the circumstances of their stay at the hotel supported a finding of her guilt on both charges.

Referring to Wagner and the unnamed employee in training, the defendant's attorney argued: "It would seem to me that not calling these individuals would clearly be an indication that they would not be testifying

in a favorable manner to the state, and their nonappearance, I think, is something that . . . I should be allowed to argue to the jury." With regard to Wagner, the defendant's attorney stressed that there were questions concerning whether he had lost the gift certificate, whether he had transferred it to a third party or whether it had been stolen from him.

The state objected to the defendant's argument, noting that the hotel employee in training was not known to the parties and that there had been no showing concerning what testimony she could provide. Thus, the state argued that there was no evidence to support a finding that her testimony would be unfavorable to the state's case. The state observed that there was testimonial evidence from the hotel's general manager that she had spoken with Wagner and that he had indicated that he had not stayed at the hotel on the evening of March 3, 2002. The state argued that there was no evidence from which to find that Wagner's testimony would have been unfavorable to the state's case. The court thereafter refused to permit the defendant's attorney to argue as requested.

The defendant did not assert a constitutional claim at trial, but argues before this court that the trial court's ruling violated her right to make a closing argument. Consequently, the defendant seeks review under *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record is adequate for review, and the claim is of constitutional magnitude. The claim, however, fails under *Golding*'s third prong because the defendant fails to demonstrate that the alleged constitutional violation clearly exists and clearly deprived her of a fair trial.

"Under the sixth and fourteenth amendments to the United States constitution, a criminal defendant has a constitutionally protected right to make a closing

argument. That right is violated not only when a defendant is completely denied an opportunity to argue before the court or the jury after all the evidence has been admitted, but also when a defendant is deprived of the opportunity to raise a significant issue that is reasonably inferable from the facts in evidence." (Internal quotation marks omitted.) *State* v. *McArthur*, 96 Conn. App. 155, 171, 899 A.2d 691, cert. denied, 280 Conn. 908, 907 A.2d 93 (2006).

"In [*State* v. *Malave*, 250 Conn. 722, 739, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000)], our Supreme Court abandoned, in criminal cases, the [rule of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960)], also known as the missing witness rule, which sanctioned, under certain circumstances, a jury instruction that an adverse inference may be drawn from the failure of a party to produce a witness. Although our Supreme Court abandoned the *Secondino* rule, it did not intend to prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case. . . . Comments in closing argument that do not directly exhort the jury to draw an adverse inference by virtue of the witness' absence do not necessarily fall under the ambit of *Secondino* . . . and accordingly are not forbidden by *Malave*. Our Supreme Court further provided that [o]f course, the trial court retains wide latitude to permit or preclude such a comment, and may, in its discretion, allow a party to adduce additional evidence relative to the missing witness issue. . . .

"The broad discretion vested in trial courts by *Malave* mirrors the general standards regarding the trial court's ability to limit closing argument. [T]he scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations.

. . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations. . . . While we are sensitive to the discretion of the trial court in limiting argument to the actual issues of the case, tight control over argument is undesirable when counsel is precluded from raising a significant issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Graham*, 67 Conn. App. 45, 48–49, 787 A.2d 11 (2001), cert. denied, 259 Conn. 911, 789 A.2d 996 (2002).

A missing witness argument is appropriate in limited circumstances. Counsel may only invite the jury to draw reasonable inferences on the basis of facts in evidence, and the court's exercise of discretion as to whether to permit such argument is dependent on the facts made known to it. For this reason, it is necessary for counsel, through facts and argument, to justify a request to make a missing witness argument. Our decisional law reflects, for example, that defense counsel should "explain how the state's decision not to call [a person as a witness] exposed a weakness in the state's case" and should "make an offer of proof regarding the substance of [such person's] potential testimony." Id., 49; see also *State* v. *McArthur*, supra, 96 Conn. App. 174. Stated otherwise, counsel must demonstrate that such witness was available to testify, set forth the substance of the testimony that such witness would have given had he been called to the witness stand and explain how his testimony would have been detrimental to the state's case. Evidence that would have been merely cumulative or of no consequence to a reasonable assessment of the state's case, for example, would not warrant such an argument. See, e.g., *State* v. *Cruz*, 71 Conn. App.

190, 211–12, 800 A.2d 1243, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

With regard to the employee in training, the defendant's attorney did not make any showing that such person was available to testify or make any representations concerning the substance of this person's potential testimony. In fact, both parties did not appear to know this person's identity. On this record, the defendant's attorney did not make any showing that the state's decision not to call this person as a witness exposed a weakness in its case.

With regard to Wagner, the defendant's attorney did not make any showing that he was available to testify or make any representations concerning the substance of his potential testimony. Despite arguing that the evidence revealed questions about Wagner that related to his hotel gift certificate, the defendant's attorney did not make any showing that the state's decision not to call Wagner as a witness exposed a weakness in its case.

The defendant's brief is replete with arguments concerning the "possible" testimony of these persons who were not called as witnesses, as well as how it is "possible" that such testimony could have been detrimental to the state's case. These arguments are the product of conjecture as to the possible testimony of these persons; they are wholly unsupported by any facts or evidence. A missing witness argument, like all types of closing argument, must be based on the facts or the fair inferences to be drawn therefrom. "[A] party cannot merely comment on the failure of the opposing party to present a witness without first providing a factual or evidentiary foundation from which to infer a weakness in the opposing party's case." *State* v. *Graham*, supra, 67 Conn. App. 50. Where, as here, a defendant's claimed entitlement to make a missing witness argument rests on mere speculation, the court's exercise of

discretion in denying permission to make such argument does not reflect an abuse of its discretion. Thus, the defendant has not demonstrated that the court improperly limited closing argument, and the claim fails under *Golding*'s third prong.

## III

The defendant next claims that the court improperly precluded certain evidence concerning the timing of her arrest. We disagree.

The state elicited testimony from Michael Lopez, a detective with the Hartford police department, who responded to the reported robbery at the hotel on March 4, 2002. Lopez testified concerning the course and results of his investigation and, specifically, his conversations with the defendant. During his cross-examination of Lopez, the defendant's attorney asked Lopez to specify the date of the defendant's arrest. The state objected to the inquiry on the ground of relevance. Outside of the jury's presence, the defendant's attorney argued that the fact that the police did not arrest the defendant until approximately one year after the police concluded their investigation following the incident was relevant because "it show[ed] . . . that the police sat on the information they had for over a year, developed no new information and then made an arrest made on information they had a year earlier." The defendant's attorney argued that the evidence was "relevant to the strength of the state's case." The court sustained the objection.

During subsequent cross-examination, Lopez agreed with the statement by the defendant's attorney that "the last date that [he had] received any information relevant to [his] investigation" was on June 17, 2002, and that he did not arrest the defendant immediately thereafter. Lopez testified that he had been handling "a very large caseload" and agreed with the characterization made

by the defendant's attorney that he had "put this [case] off because of other more important investigations . . . ." Lopez also testified that he had not identified any other individuals involved in the alleged crimes.

On appeal, the defendant claims that the court abused its discretion in excluding evidence of the date of her arrest. The defendant claims that this evidence "would have shown the possible bias and weakness in the state's case" in that it "was relevant to the thoroughness of the investigation performed against the defendant in creating this case." The defendant posits that evidence of a one year delay prior to her arrest tended to prove "that the police failed to properly investigate the crime or that the police let the case lag and simply arrested [her] to clear the docket." According to the defendant, this evidence "could have shown the jury that the Hartford police department failed to investigate this case properly and did not perform a sufficient examination of every possible cause and perpetrator of this crime." Among other arguments in this vein, the defendant posits that this evidence tended to prove that Lopez "arrested [her] and decided to let the court system determine if she was guilty instead of doing the police work himself."[1]

"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial

[1] Alternatively, the defendant asserts that "[t]his evidence may have allowed the jury to assess the credibility of the arresting officer, as well as any witness who clearly believed the defendant committed this crime without direct proof." Even were we to agree with the defendant that this evidence was relevant to the issue of credibility, which we do not, the record reflects that the defendant did not assert this rationale as a ground of admissibility at trial. We therefore decline to address this aspect of the defendant's claim. See, e.g., *State* v. *Croom*, 166 Conn. 226, 231, 348 A.2d 556 (1974); *State* v. *Hawkins*, 162 Conn. 514, 515–16, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249 (1972).

court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 864–65, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005).

"[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason . . . ." (Internal quotation marks omitted.) *State* v. *Cummings*, 91 Conn. App. 735, 743, 883 A.2d 803, cert. denied, 276 Conn. 923, 888 A.2d 90 (2005).

As a preliminary matter, the defendant asserts that the evidence at issue was specifically relevant to the jury's assessment of the police investigation that led to her arrest, as well as generally relevant to the strength of the state's case. Certainly, the defendant's right to present a defense encompassed her right to present evidence that was relevant for such purposes. The defendant has not persuaded us, however, that the evidence at issue had a logical tendency to aid the jury in

determining whether the police adequately investigated the case or whether the state failed to prove any of the essential elements of the crimes with which she stood charged. Evidence must *logically* tend to prove or disprove a material fact for which it is being offered. The date of the defendant's arrest, when viewed either independently or along with all of the other evidence presented, did not tend to demonstrate that the police had inadequately investigated the case, were unsure that the defendant was the perpetrator of the crimes, had rushed to arrest her or had arrested the wrong person.

Even were we to conclude that the exclusion of this evidence was improper, we nonetheless would conclude that its exclusion was harmless under the facts of this case. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . As we have recently noted, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . [O]ur determination that the defendant was harmed by the trial court's [evidentiary rulings] is guided by the various factors that we have articulated as relevant [to] the inquiry of evidentiary harmlessness . . . such as the importance of the [evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [evidence] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 641–42, 930 A.2d 628 (2007).

Here, the defendant elicited detailed testimony concerning Lopez' investigation of the crimes, his police

caseload, his view of the importance of this investigation, his inability to identify an accomplice and, importantly, that Lopez did not act quickly in arresting the defendant. During his closing argument, the defendant's attorney urged the jury to find that Lopez, facing a backlog of cases, was under "pressure" to clear his caseload, hastily "slapped" this case together and rushed to "pin it on" the defendant. Thus, without presenting evidence of the date of the defendant's arrest, the defendant explored adequately her theory that Lopez' investigation was inadequate, that her arrest was unwarranted and, generally, that the state's case was not sound.

Accordingly, we conclude that the court's ruling reflected a proper exercise of discretion.

IV

Finally, the defendant claims that a portion of the sentence imposed by the court is illegal. We agree.

For the charge of larceny in the first degree, the court imposed a sentence of twelve years incarceration, suspended after five years, followed by five years of probation. For the charge of falsely reporting an incident in the second degree (count two), the court imposed a sentence of five years incarceration, concurrent to the larceny sentence. The defendant claims, and the state agrees, that the court improperly exceeded the statutory maximum limit in its sentence for count two.

"[T]he jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Practice Book § 43-22, which provides the trial court with such authority, provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may

correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to [Practice Book] § 43-22 with the judicial authority, namely, the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 533–34, 902 A.2d 1058 (2006). "[B]oth the trial court, and this court, on appeal, have the power, at any time, to correct a sentence that is illegal." (Internal quotation marks omitted.) *State* v. *Constantopolous*, 68 Conn. App. 879, 882, 793 A.2d 278, cert. denied, 260 Conn. 927, 798 A.2d 971 (2002). Where, as here, the issue is whether the sentence exceeds relevant statutory maximum limits, the issue is one of law, and we afford it plenary review.

"Falsely reporting an incident in the second degree is a class A misdemeanor." General Statutes § 53a-180c (b). As such, it is punishable by a definite sentence of "a term [of imprisonment] not to exceed one year . . . ." General Statutes § 53a-36 (1). Plainly, the sentence of five years imposed by the court exceeds the statutory limit for the crime and must be corrected.

The judgment is reversed only as to the sentence imposed for the conviction of falsely reporting an incident in the second degree and the case is remanded for resentencing on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.