## STATE OF CONNECTICUT *v.* GERCI PEREIRA
## (AC 29647)

McLachlan, Lavine and West, Js.

Argued January 6—officially released April 14, 2009

*John Serrano*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robert F. Mullins*, *Sr.*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Gerci Pereira, appeals from the judgment of conviction rendered after the trial court denied his motions for a judgment of acquittal

and a new trial. Following a trial by jury, the defendant was convicted of assault in the third degree pursuant to General Statutes § 53a-61 (a) (1),[1] risk of injury to a child pursuant to General Statutes § 53-21 (a) (1)[2] and criminal violation of a protective order pursuant to General Statutes § 53a-223 (a).[3] The jury found the defendant not guilty of threatening in the second degree in violation of General Statutes § 53a-62 (a) (2).[4] The defendant claims on appeal that the court improperly admitted evidence of his prior uncharged misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim lived together in Massachusetts in a difficult and violent relationship. They separated shortly after their only child was born. Sometime in early 2006, after the defendant attacked the victim, the victim's brother brought her and the child to Connecticut. The victim and the child initially lived in West Hartford with her brother and subsequently moved into an apartment in Hartford.

On March 19, 2007, when the child was one and one-half years old, the defendant entered the victim's apartment building, although he did not have a key card to

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

[3] General Statutes § 53a-223 (a) provides in relevant part: "A person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order."

[4] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when . . . (2) such person threatens to commit any crime of violence with the intent to terrorize another person . . . ."

enter it or a key to operate the elevator, and knocked on her door. The victim asked the defendant to leave "because [she] wanted no problems with him." The defendant stated that he wanted to see his child, and the victim told him that he would have to go to court for that. When she attempted to close the door of her apartment, the defendant forced his way in. He started pulling the victim toward the kitchen and told her that he would kill her and that she had no escape. The victim managed to free herself, ran out of the apartment and knocked on her neighbor's door. The neighbor later testified that the victim screamed for help and told him that the defendant was trying to kill the child.

The defendant followed the victim to the neighbor's apartment. Holding the child in one hand and a knife in the other, he told the victim that he would kill himself and the child if she called the police. The neighbor, who witnessed the defendant making the threat, testified that he told the defendant to calm down and that no one was going to call the police. The defendant then proceeded toward the elevator with the child, and the neighbor followed him while the victim called the police. The neighbor followed the defendant downstairs and eventually took the child and brought him back to the victim.

During the trial and outside of the jury's presence, the court summarized its earlier discussion with both counsel about the state's offer of proof regarding three instances of the defendant's prior uncharged misconduct. The court explained that the state relied on *State v. Irizarry*, 95 Conn. App. 224, 896 A.2d 828, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006), in which a defendant was convicted of threatening in the second degree in violation of § 53a-62 (a) (2), and this court decided that prior uncharged conduct of that defendant was admissible on the issue of his intent to terrorize the victim. The court stated that *Irizarry* "recognized

that there must be a balancing between the probative value of the offered evidence and its prejudicial effect" and that such "balancing can only be undertaken by the court following [the] offer of proof." The court also stated that if the testimony was admitted, limiting jury instructions would be required following the testimony and at the conclusion of the case.

The state made the following offer of proof. The victim testified that on May 17, 2006,[5] she encountered the defendant as she and the child were returning from a doctor's appointment, accompanied by her male friend. The friend was holding an infant car seat with the child in it. The defendant told the friend that the child was his and ordered him to let go of the seat. The defendant then punched the victim's friend and left. The state asked the victim, "Did he make any . . . threats of violence toward you?" and she replied, "He was always making threats." The victim proceeded to testify about two additional incidents that occurred on September 21, 2006, and January 21, 2007.

The state then argued that, in each incident prior to March 19, 2007, "there was a threat and it was followed by an assault . . . [and] the state's position is [that] it's reasonable for this victim, based on her prior incidents with [the defendant], to believe that he was going to follow through on that threat. . . . [O]ne of the only ways for the state to prove [the defendant's intent] is based on extrinsic evidence such as prior . . . uncharged misconduct." The state further argued that threatening in the second degree is a specific intent crime and that the defendant's prior misconduct was probative on the issue of whether the defendant intended on March 19, 2007, to put the victim in fear.

---

[5] The state elsewhere referred to the incident as having occurred on May 18, 2006, and the victim stated that she did not remember the exact date during the cross-examination by the defendant's counsel. We will refer to the incident as having occurred on May 17, 2006.

The court decided that the victim's memory regarding the events of September 21, 2006, and January 21, 2007, was faulty and that her testimony about those events was not sufficiently probative to be admitted. The court concluded, however, that the May 17, 2006 event was sufficiently similar to the incident in which the defendant was charged because an assault or an injury was brought against a third person to threaten the victim. The court stated that the victim would need to testify about a specific threat that took place on May 17, 2006, for the evidence regarding that event to have probative value because her previous statement that "[the defendant] was always making threats," was not sufficiently probative. The court also noted that the problem with the victim's testimony might have been a "translation issue."[6] The state then asked the victim whether she remembered what the defendant did as she and her friend were returning from the doctor's appointment on May 17, 2006. The victim stated, "He came running and hit my friend. He was threatening; he talked about killing; he hit him in the face and he ran; if you don't remove your hand from my child."

The court then stated that it would allow the state to "very narrowly question on that one incident" and that it would provide a limiting instruction right after the victim's testimony on that issue. The court concluded that the event of May 17, 2006, was "probative on the issue of intent with regard to threatening with the intent to terrorize" because it "involve[d] threats [and] an injury to a third party." The court further decided that "[a]s far as the prejudicial part of it . . . it would not unduly prejudice the defendant, in that, it is certainly of less seriousness than the present matter." The court concluded that the probative value outweighed the prejudicial effect with regard to the May

---

[6] The transcripts indicate that the victim was assisted by a Portuguese interpreter.

17, 2006 incident and that "[it] is specific as to the intent in the threatening in the second degree, the intent to terrorize." The victim testified before the jury regarding the May 17, 2006 incident. She was asked, "Did [the defendant] say anything specifically to you?" and she replied, "It was to me that he said that he was going to kill." The court then gave the jury limiting instructions, stating that the evidence was "being admitted solely to show, or establish, the defendant's intent regarding count three of the information . . . [which] alleges threatening in the second degree. The evidence is not being admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts." The court told the jury that it may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate criminal propensity. The court reiterated that the jury may consider the evidence only on the issue of the defendant's intent as to the count charging him with threatening in the second degree and for no other purpose. During its final charge to the jury, the court gave a similar limiting instruction on the use of the victim's testimony. On November 9, 2007, the defendant filed a motion for a judgment of acquittal and a motion for a new trial, in which he argued, among other things, that the prejudicial effect of the evidence regarding his prior uncharged misconduct outweighed its probative value. The court denied both motions.

The defendant claims that the court improperly concluded that the victim's testimony regarding the May 17, 2006 incident was admissible under § 4-5 (b) of the Connecticut Code of Evidence and that its probative value outweighed its prejudicial effect. We are not persuaded. Although the defendant was acquitted of the charge of threatening in the second degree, he claims that the jury was unduly prejudiced against him with

respect to the remaining charges, and we therefore address his claim.

We first set forth our standard of review. "The admission of evidence of . . . uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *McFarlane*, 88 Conn. App. 161, 164, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005).

Pursuant to § 4-5 (b) of the Connecticut Code of Evidence,[7] "evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove *intent*, identity, malice, motive, a system of criminal activity or the elements of a crime." (Emphasis added; internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 858–59, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005).

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting

[7] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) . . . Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. . . .

"(b) . . . Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove *intent*, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ." (Emphasis added.)

its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Internal quotation marks omitted.) Id., 859.

"To prove that the defendant was guilty of the crime of threatening in the second degree, the state was required to establish, beyond a reasonable doubt, that the defendant *threaten[ed]* *to commit any crime of* *violence with the intent to terrorize another person.* . . . We previously have defined terrorize, as used in § 53a-62 (a) (2), as meaning to scare or to cause intense fear or apprehension. . . . Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Irizarry,* supra, 95 Conn. App. 233–34; see footnote 4. In the present case, therefore, the state sought to introduce the victim's testimony regarding the May 17, 2006 incident to prove that the defendant acted with the intent to terrorize her when he threatened to kill himself and the child on March 19, 2007.

The defendant first argues that the prior uncharged misconduct from May 17, 2006, was not probative on the issue of his intent to terrorize the victim on March 19, 2007, because the defendant's threats on May 17, 2006, were directed at the victim's friend while his threats on March 19, 2007, were directed at the victim. The defendant argues that the May 17, 2006 misconduct is not relevant because it occurred ten months before the conduct for which he was charged and that his threats on that day were directed at the third party with whom, as far as he was aware, the victim had no emotional connection. We are not persuaded.

The court concluded that the incident on May 17, 2006, was similar to the incident of March 19, 2007. In both instances, the victim and the child were closely involved in an altercation. The court specifically stated that it found the victim's testimony that the defendant "was always making threats" not specific enough. The court, however, concluded, after hearing the victim's testimony that the defendant "was threatening" and that "he talked about killing," that the threats were directed at her.[8] We therefore disagree with the defendant's argument that the victim's testimony indicated that the defendant threatened only her friend on May 17, 2006.

This court has held that "[t]he high degree of similarity required for admissibility on the issue of identity is not required for misconduct evidence to be admissible on the issue of intent." (Internal quotation marks omitted.) *State* v. *Erhardt*, supra, 90 Conn. App. 860. "Evidence is relevant if it has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree." (Internal quotation marks omitted.) *State* v. *Irizarry*, supra, 95 Conn. App. 235. This court held in *Irizarry* that the evidence that the defendant previously threatened the victim was relevant to show his intent to cause her intense fear or apprehension and that by his actions he did not intend merely to annoy or to irritate her but, rather, to cause her intense fear or apprehension. Id., 237; contra *State* v. *Meehan*, 260 Conn. 372, 395, 796 A.2d 1191 (2002) (court abused discretion in admitting evidence that defendant took money during search because that did not render it more or less likely that during subsequent and unrelated search of different person, defendant had

---

[8] The victim's later testimony before the jury is described in this opinion and, although not relevant to our inquiry, confirms the court's understanding of her testimony to mean that the defendant threatened her on May 17, 2006.

specific intent to appropriate another's money). We conclude that the May 17, 2006 incident, was relevant to show that the defendant did not intend merely to annoy or to irritate the victim on March 19, 2007, but that he intended to cause her fear and apprehension by threatening to kill her child. We therefore conclude that the court did not abuse its discretion in concluding that the victim's testimony regarding the May 17, 2006 incident was relevant to the issue of the defendant's intent to terrorize her on March 19, 2007.

The defendant further argues that the court abused its discretion in concluding that the probative value of the victim's testimony outweighed its prejudicial effect because the court failed to directly balance the two. We disagree. We note that "[a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The court bears the primary responsibility for conducting the balancing test to determine whether the probative value outweighs the prejudicial impact, and its conclusion will be disturbed only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State v. William C.*, 103 Conn. App. 508, 519–20, 930 A.2d 753, cert. denied, 284 Conn. 928, 934 A.2d 244 (2007). "Proper limiting instructions often mitigate the prejudicial impact of evidence of prior misconduct. . . . Furthermore, a jury is presumed to have followed a court's limiting instructions, which serves to lessen any prejudice resulting from the admission of such evidence." (Citation omitted; internal quotation marks omitted.) Id., 520.

We disagree with the defendant's argument that the court did not directly weigh the probative value against the prejudicial effect. As we described previously, the

court thoroughly analyzed the probative value of the defendant's prior uncharged misconduct, namely, its relevance to the issue of his intent to terrorize the victim. Having analyzed the probative value of the evidence, the court then examined its prejudicial effect. It concluded that the defendant's act of threatening the victim and her friend and punching the friend on May 17, 2006, was a less serious matter than the act of holding the child and the knife and threatening to kill himself and the child. See State v. Irizarry, supra, 95 Conn. App. 238 (court did not abuse discretion in concluding probative value outweighs prejudicial effect when misconduct evidence no more shocking than evidence of crimes with which defendant charged); see also State v. Epps, 105 Conn. App. 84, 93–94, 936 A.2d 701 (2007) (court did not abuse discretion in admitting prior uncharged misconduct when uncharged misconduct not as brutal as conduct for which defendant charged), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008). The court further lessened the prejudicial effect of the victim's testimony by instructing the state to question her "very narrowly" on that one incident and providing limiting instructions to the jury both immediately after the victim's testimony about the prior uncharged misconduct and during its final instructions to the jury. See State v. Irizarry, supra, 238 (court minimized potential prejudice by repeatedly giving limiting instructions on use of evidence); see also State v. Hall, 98 Conn. App. 673, 681–82, 911 A.2d 331 (2006) (same), cert. denied, 281 Conn. 908, 916 A.2d 52 (2007); State v. McFarlane, supra, 88 Conn. App. 166 (same). Upon reviewing the record and the parties' briefs, we conclude that the court properly balanced the probative value and the prejudicial effect of the victim's testimony and did not abuse its discretion in concluding that the former outweighed the latter.

The judgment is affirmed.

In this opinion the other judges concurred.