## STATE OF CONNECTICUT *v.*
## CHRISTOPHER CARRION
## (AC 31166)

Bishop, Gruendel and West, Js.

Argued February 3—officially released April 19, 2011

*Daniel Jonah Krisch*, special public defender, with whom were *Michael S. Taylor* and, on the brief, *Dana M. Hrelic*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former

state's attorney, and *Amy Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Christopher Carrion, appeals from the judgments of conviction, following a jury trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that the court improperly (1) admitted as substantive evidence the videotaped interview of the minor victim, D.L.,[2] (2) joined two cases for trial and (3) instructed the jury that "[t]he state is as much concerned in having an innocent person acquitted as in having a guilty person convicted." We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. From January, 2005, to March, 2007, the defendant lived with his parents in Prospect, and D.L. lived with her parents and siblings in Waterbury. During this time, the defendant and D.L. regularly spent time together, as the two were cousins whose families would often gather to share holidays, parties and other family occasions. On March 25, 2007, D.L., who was then seven years old, revealed to her mother, R.L., that the defendant previously had sexually abused her during visits in both Prospect and Waterbury. Soon thereafter, R.L. informed detectives of the Waterbury police department of her daughter's revelations, and a formal investigation of the alleged abuse was initiated.

---

[1] The conduct charged in this case occurred on various dates between January, 2005, and March, 2007. Although § 53-21 has been amended since that time, that amendment is not relevant to the merits of this appeal. For convenience, we refer to the current revision of the statute.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

On April 9, 2007, D.L. underwent a forensic interview during which she recounted in detail the nature of the defendant's sexually abusive behavior. This interview was recorded by videotape in its entirety and the substance of D.L.'s statements during the interview were later confirmed by the defendant himself in a voluntary statement that he made to Waterbury police detectives on May 18, 2007. Additionally, on May 21, 2007, D.L. underwent a physical examination that corroborated further her account of the defendant's sexually abusive behavior.

The defendant subsequently was arrested and charged in two separate informations[3] with four counts of sexual assault in the first degree in violation of § 53a-70 (a) (2), four counts of risk of injury to a child in violation of § 53-21 (a) (2) and two counts of risk of injury to a child in violation of § 53-21 (a) (1). The cases were consolidated and, following a jury trial, the defendant was convicted of the four counts of sexual assault in the first degree and the four counts of risk of injury to a child.[4] Thereafter, the court imposed a total effective sentence of thirty years incarceration, execution suspended after twenty-three years, with ten years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

ADMISSIBILITY OF VIDEOTAPED INTERVIEW

The defendant first claims that the court improperly admitted as substantive evidence the videotaped interview of D.L. Specifically, the defendant claims that, given the highly suggestive and leading manner in which

[3] The state charged the defendant separately, given the fact that his sexual abuse of D.L. occurred allegedly at different times and at different locations in Prospect and Waterbury.

[4] The defendant was found not guilty of the remaining two counts of risk of injury to a child.

the interviewer elicited answers from D.L., D.L.'s video-taped account of the defendant's abusive conduct was coerced and is grievously unreliable. We disagree.

The following additional facts are relevant to the resolution of the defendant's claim. Prior to trial, the defendant filed a motion in limine seeking to preclude the state from admitting as evidence the videotaped interview of D.L. In support of this motion, the defendant argued, inter alia, that the coercive nature by which D.L.'s description of the sexual abuse was procured rendered the videotaped interview grievously unreliable and, therefore, inadmissible.

On January 23, 2009, an evidentiary hearing was held on the defendant's motion, during which the defendant presented the expert testimony of a clinical psychologist, David M. Mantell. Mantell testified that in his professional opinion, "the validity of the investigation techniques" used during D.L.'s interview were "so seriously marked from the best practices, that . . . they invalidate[d] the procedural integrity of the [entire] evaluation." More precisely, Mantell criticized the "suggestive techniques" utilized by the interviewer during D.L.'s examination; techniques that he found "produce[d] results of a questionable memory . . . ." At the conclusion of Mantell's testimony, the court denied the defendant's motion in limine, ruling that "Mantell's review [of the videotape], with the benefit of 20/20 hindsight . . . does show that some questions could be better worded . . . but not that [D.L.'s] testimony was coerced." As the court explained, the "failure to comply with protocols or prevailing standards does not necessarily connote grievous unreliability," as otherwise required for exclusion.

During the state's case-in-chief, D.L. testified as to the defendant's sexually abusive behavior; however, her testimony in this regard was often inconsistent with

the details she provided during her videotaped interview. As such, following D.L.'s testimony, the state moved to introduce the portions of the videotaped interview that were inconsistent with D.L.'s trial testimony as substantive evidence pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and § 8-5 of the Connecticut Code of Evidence.[5] In response, the defendant argued that D.L.'s "statement[s] [during the interview] were taken in such circumstances that they undermine[d] the reliability of the statement[s]" and should be excluded under *State* v. *Mukhtaar*, 253 Conn. 280, 306–307, 750 A.2d 1059 (2000). The court then granted the state's request to admit "those portions of the tape that [were] inconsistent with [D.L.'s] testimony," and, at the behest of the defendant, the entire videotaped interview eventually was admitted and shown to the jury members.

The defendant now claims that the court improperly admitted D.L.'s videotaped interview as substantive evidence. Specifically, the defendant maintains that because of the overtly suggestive manner by which the interviewer obtained D.L.'s account of the defendant's sexually abusive behavior, the videotaped interview should have been excluded as grievously unreliable.

Before addressing the merits of the defendant's claim, we begin by setting forth the applicable standard of

[5] As the commentary to § 8-5 of the Connecticut Code of Evidence explains, "[§] 8-5 (1) incorporates the rule of *State* v. *Whelan*, [supra, 200 Conn. 753]"; Conn. Code Evid. § 8-5 (1), commentary; with respect to the "prior inconsistent statement" exception to the general hearsay rule. Pursuant to § 8-5, a prior inconsistent statement of a witness is "not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial . . . ." Id., § 8-5. A prior inconsistent statement of a witness is one that is "(A) . . . in writing or otherwise recorded by . . . videotape . . . (B) the writing or recording is duly authenticated as that of the witness, and (C) the witness has personal knowledge of the contents of the statement." Id., § 8-5 (1). The defendant does not dispute that D.L.'s videotaped interview qualifies as a prior inconsistent statement.

review and legal principles governing our analysis. "[T]he admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the . . . discretion of the trial court. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 643, 945 A.2d 449 (2008).

In *State* v. *Mukhtaar*, supra, 253 Conn. 306–307, our Supreme Court explained "that the linchpin of admissibility [under *Whelan*] is reliability: the [prior inconsistent] statement may be excluded as substantive evidence only if the trial court is persuaded, in light of the circumstances under which the statement was made, that the statement is so untrustworthy that its admission into evidence would subvert the fairness of the fact-finding process. In the absence of such a showing by the party seeking to exclude a statement that meets the *Whelan* criteria, the statement is admissible as substantive evidence; like all other evidence, its credibility is grist for the cross-examination mill. Thus, because the requirements that [were] established in *Whelan* provide a significant assurance of reliability, it will be the highly unusual case in which a statement that meets the *Whelan* requirements nevertheless must be kept from the jury."

Here, there is no dispute that D.L.'s videotaped interview satisfies the criteria of a prior inconsistent statement articulated in *Whelan* and adopted in § 8-5 of the Connecticut Code of Evidence. Rather, the defendant argues, quoting *Mukhtaar*, that "in light of the circumstances under which the statement was made . . . the statement is so untrustworthy that its admission into

evidence . . . subvert[ed] the fairness of the fact-finding process." Id., 307. Our review of the videotape, however, does not support the defendant's characterization of D.L.'s forensic interview. Although it is true that the interviewer used leading questions to elicit information from D.L., it is equally true that D.L. freely volunteered information, including the identity of the defendant, when describing how she was sexually abused. In fact, the defendant's claim that the "circumstances of the interview . . . made the videotape grievously unreliable" is nothing more than an attack on the credibility of D.L.'s statements during the interview, and, as our Supreme Court noted in *Mukhtaar*, "credibility is grist for the cross-examination mill." *State* v. *Mukhtaar*, supra, 253 Conn. 307. Although we are mindful of the criticisms voiced by Mantell regarding the manner in which the interview was conducted, we agree with the court that the "failure to comply with . . . prevailing standards does not necessarily connote grievous unreliability" such that the videotape should have been excluded. To the contrary, these criticisms are, and were in this case, appropriate for the jury members to consider in weighing the overall credibility of D.L.'s description and allegations of the defendant's sexual abuse. Finally, there is nothing "so unduly coercive or extreme" about the circumstances of D.L.'s interview that would serve to "grievously undermine the reliability generally inherent in such a statement, so as to render it, in effect, not that of" D.L. herself. *State* v. *Mukhtaar*, supra, 306. "[L]ike statements satisfying the requirements of other hearsay exceptions"; id.; D.L.'s prior inconsistent statements during the videotaped interview were "presumptively admissible"; id.; and that presumption was never rebutted by the untrustworthiness advanced by the defendant.

Thus, based on our review of the record, we cannot say that the court's decision to admit as substantive

evidence D.L.'s videotaped interview constituted an abuse of discretion in the present case. Accordingly, the defendant's claim fails.

## II

## JOINDER

The defendant next claims that the court improperly joined and consolidated the two cases stemming from his sexual abuse of D.L. in Prospect and Waterbury. Specifically, the defendant maintains that, given the high degree of factual similarity between the two cases, it was impossible for the jury to consider the cases separately, thereby depriving him of a fair trial. We are not persuaded.

The following additional facts are relevant to the disposition of the defendant's claim. On September 11, 2008, the defendant filed a motion to sever the Prospect and Waterbury cases, claiming that a "joinder of [these cases] would prejudice his right to a fair trial and . . . result in substantial injustice." In response, the state filed a motion to consolidate the cases, arguing, inter alia, that the "charges involve[d] discrete, easily distinguishable factual scenarios . . . and [that a consolidated] trial [would] not be complex." On January 15, 2009, the court granted the state's motion to consolidate, ruling that, pursuant to *State* v. *Sanseverino*, 287 Conn. 608, 629, 949 A.2d 1156 (2008), overruled in part on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), "evidence from the Prospect case . . . would be cross admissible in the trial of the Waterbury case" to show a common plan or scheme and, therefore, joinder of the two cases was warranted. Thereafter, at the conclusion of the defendant's consolidated trial, the court instructed the jury members that "[t]he fact that there are two separate informations should not in any way be held against the defendant. There are two separate informations only because the

state alleges that the crimes took place in two separate locations."

The defendant now claims that the court improperly joined the Prospect and Waterbury cases. The defendant argues that because of the factual similarities between the two cases, the jury could not possibly consider the cases separately and, as such, he was deprived of his right to a fair trial.

"General Statutes § 54-57 and Practice Book § 41-19 permit a trial court to join similar charges in pending cases against a common defendant. Our prior decisions have made clear that the trial court enjoys broad discretion in this respect and that its decision to consolidate will not be disturbed in the absence of manifest abuse of that discretion. . . . [T]his court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges. . . . On appeal, [t]he defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Gupta*, 297 Conn. 211, 222–23, 998 A.2d 1085 (2010).

"Where evidence of one incident can be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . We consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been cross admissible at separate trials." (Citation omitted; internal quotation marks omitted.) *State* v. *Sanseverino*, supra, 287 Conn. 628–29.

"[T]o establish a common scheme, [i]t is not enough that the two offenses are similar. . . . [Rather], the characteristics of the two offenses must be sufficiently distinctive and unique as to be like a signature. . . . We repeatedly have applied, however, a more liberal approach to admitting evidence of misconduct to prove a common plan or scheme in sex crime cases than in other types of cases. . . . We generally have determined that such evidence is relevant to a common scheme or plan of sex crimes provided that three conditions are met: [T]he prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness." (Citations omitted; internal quotation marks omitted.) Id., 631.

Here, the court relied on the three factors articulated in *Sanseverino* to conclude that joinder of the Prospect and Waterbury cases was appropriate, as evidence in each case was cross admissible in the other. As the court reasoned, the "two offenses occurred over the same time period . . . [involved a] course of conduct [that] seems to be similar . . . [a]nd, of course . . . were both committed against the same person." Nonetheless, the defendant maintains that the court abused its discretion in joining the cases because the two cases were so factually similar that the jury could not possibly consider each of the offenses separately. As our Supreme Court in *Sanseverino* emphasized, however, the factual similarities of cases—including timing, nature of the crimes and the characteristics of the victim or victims—is an important, and arguably, dispositive, consideration that trial courts must identify in determining that joinder is justified based on the cross-admissibility of evidence. Indeed, were it not for the factual similarities between the Prospect and Waterbury cases, joinder of the cases would not be appropriate under the *Sanseverino* standard. Moreover, our review of the

record discloses, and the defendant concedes, that the prosecutor and the court took great caution in informing the jury members to consider each case separately based on the entirety of the evidence presented. See *State* v. *Gupta,* supra, 297 Conn. 223 ("[t]he defendant bears a heavy burden of showing that . . . any resulting prejudice [of joinder] was beyond the curative power of the court's instructions" [internal quotation marks omitted]).

Therefore, we conclude that the court thoroughly considered the propriety of joining the Prospect and Waterbury cases pursuant to the methodology of *Sanseverino* and, accordingly, we "will not second guess the considered judgment of the trial court as to the joinder" of those two cases. (Internal quotation marks omitted.) Id. Thus, the defendant's claim of improper joinder cannot prevail.

## III

### JURY INSTRUCTION

The defendant's final claim is that the court improperly instructed the jury that "[t]he state . . . does not want the conviction of an innocent person . . . [as] [t]he state is as much concerned with having an innocent person acquitted as in having a guilty person convicted." Specifically, the defendant argues that this instruction improperly bolstered the credibility of the prosecutor and weakened the defendant's presumption of innocence. The defendant concedes that he did not preserve this claim at trial and now seeks review pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We review the defendant's claim because

---

[6] Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional

the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Peeler*, 271 Conn. 338, 369 n.29, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). Nevertheless, on its merits, the defendant's claim fails to satisfy *Golding*'s third prong.

The following additional facts are relevant to the resolution of the defendant's claim. On Friday, February 6, 2009, the court held a charging conference in chambers with both parties to discuss "the charge and [make] further amendments or refinements to it" as needed. The following Monday, February 9, 2009, the court explained that, although it had not provided a final draft of the charge to counsel, "the draft that [the parties had was] essentially in substance what the charge to the jury [would be] . . . [and that] a final draft [would be provided to the parties] after closing arguments . . . ." At this time, defense counsel noted that she "did have an opportunity to review the jury charge . . . [and] had made a request to certain changes with regard to the reasonable doubt charge, and [had] take[n] exception as to those changes that did not take place." The court responded that defense counsel's exception was noted and that "both counsel . . . [would have] another opportunity to record any exceptions that they may have" after the charge was delivered to the jury. At the conclusion of its charge, the court inquired of defense counsel as to whether she had further objection to the instruction that was delivered to the jury members. Defense counsel then reiterated the "exception to the charge as to certain objections which [were] provided to the court in writing with regard to the

violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. Although the defendant also requests review pursuant to the plain error doctrine; see Practice Book § 60-5; such review is not warranted in light of our decision to review the defendant's claim pursuant to *Golding*.

reasonable doubt charge."[7] At no time, however, did defense counsel object to the specific language that the defendant now claims was improper.

"It is well established in Connecticut that unpreserved claims of improper jury instructions are reviewable under *Golding* unless they have been . . . implicitly waived." *State* v. *Kitchens*, 299 Conn. 447, 468, 10 A.3d 942 (2011). It is also well established that "[w]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Citation omitted; internal quotation marks omitted.) Id., 469.

In *Kitchens*, our Supreme Court stated that "[c]ases in which Connecticut courts have deemed jury instructions implicitly waived under *Golding* fall into three categories." Id., 475. In one of those categories, "courts have found waiver when there was no on-the-record discussion of the challenged jury instruction but the defense acquiesced in, or failed to object to, the instruction as given, and engaged in other trial conduct consistent with acceptance of the instruction." Id., 477. "This

---

[7] We note that the record is devoid of any such written objection. We further note that it is well established that "[i]t is the appellant's burden to provide an adequate record for review." (Internal quotation marks omitted.) *State* v. *Morales*, 121 Conn. App. 767, 775, 996 A.2d 1206, cert. denied, 298 Conn. 909, 4 A.3d 835 (2010).

is in accord with case law stating that a party may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) Id., 480. Of course, a "constitutional claim [of instructional error] that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) Id., 467.

In the present case, we deem the defendant's unpreserved instructional challenge implicitly waived in accordance with our Supreme Court's ruling in *Kitchens*. Here, there "was no on-the-record discussion of the challenged jury instruction but the defense acquiesced in, or failed to object to, the instruction as given, and engaged in other trial conduct consistent with acceptance of the instruction." Id., 477. Not only was defense counsel given an opportunity to review "in substance" the court's charge before it was delivered to the jury members, but the court also afforded defense counsel the opportunity to object to any portion of the charge after the jury instructions had been given. At no time, either before or after the instructions were delivered, did defense counsel object to the specific language now challenged by the defendant for the first time on appeal. Moreover, in concluding that defense counsel "acquiesced in, or . . . engaged in . . . conduct consistent with acceptance of the instruction"; id.; we find it telling that an objection was raised with respect to other aspects of the court's charge, other than the instruction that is now claimed to be improper. Indeed, because "*Golding* is not intended to give an appellant a second bite at the apple"; (internal quotation marks omitted) id., 480; to now afford the defendant

relief would amount to an ambuscade of the trial judge. See also *State* v. *King*, 289 Conn. 496, 505, 958 A.2d 731 (2008) ("[t]he purpose of the [rule of practice that claims of instructional error are reviewable only if they are raised at trial] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials" [internal quotation marks omitted]).

Therefore, because we deem the defendant's claim of instructional error implicitly waived under *Kitchens*, the defendant's unpreserved claim fails to satisfy the third prong of *Golding*. Accordingly, the defendant's claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.