STATE OF CONNECTICUT *v.* GARY DILLARD
(AC 31732)

Bear, Espinosa and Schaller, Js.

Argued September 9—officially released December 6, 2011

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Eugene R. Calistro, Jr.*, senior assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Gary Dillard, appeals from the judgment of conviction, following a trial by jury, of one count of manslaughter in the first degree in violation of General Statutes § 53a-55, one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), one count of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (3), and one count of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The defendant claims that the trial court erred in (1) failing to inquire into a possible conflict of interest between the defendant and his trial counsel, (2) admitting evidence of prior acts of misconduct and (3) denying the defendant's motion to sever certain charges. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence presented. The victim, Patricia Austin, lived in the town of Hamden with her four sons. For approximately six months, the defendant lived at the victim's home and was involved with her romantically. Between 8 a.m. and 9 a.m. on April 18, 2007, the defendant went to the victim's home. Shortly thereafter, two of the victim's sons, who were in the basement at the time, heard their mother scream one of the children's names. They ran upstairs and saw the defendant in a third floor bedroom holding a twelve inch butcher's knife and restraining the victim by her hair. The defendant then forced the victim outside. One son told the defendant to put the knife down, and the defendant said, "I'm going to kill her, I'm going to kill her." The defendant then stabbed the victim in the chest and ran down the street. The stabbing caused damage to the victim's heart and lung, causing her to die shortly thereafter.

The defendant arrived at a nearby gas station and, after threatening a customer with the knife, drove away in a stolen green Subaru Impreza. The police apprehended the defendant in New Haven at approximately 10 a.m. while he was driving the Subaru. The police discovered a sweatshirt stained with the victim's blood inside the vehicle. The defendant admitted to police that he had stabbed the victim, but asserted that it was an accident. Although the defendant showed police the area where he had thrown the knife from the car, the police were unable to locate the knife.

The defendant was arrested and charged with one count of murder in violation of General Statutes § 53a-54a, one count of violating a protective order in violation of General Statutes § 53a-223, one count of robbery in the first degree in violation of § 53a-134 (a) (3), one count of attempt to commit robbery in the first degree in violation of §§ 53a-49 and 53a-134 (a) (3), and one count of threatening in the second degree in violation of § 53a-62 (a) (1). The defendant entered an *Alford* plea to the charge of violating a protective order.[1] On March 17, 2009, the state filed a substitute information omitting this charge. Following trial, the jury found the defendant not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree and each of the four remaining charges. On June 26, 2009, the court imposed a total effective sentence of thirty-six years incarceration. This appeal followed. Additional facts will be set forth as necessary.

---

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Pentland*, 296 Conn. 305, 308 n.3, 994 A.2d 147 (2010).

# I

The defendant's first claim is that the court erred in failing to conduct an inquiry regarding a possible conflict of interest between him and his attorney. Specifically, the defendant argues that the court's knowledge of the fact that his lawyer assaulted him required the court to ascertain whether the incident gave rise to a conflict of interest. We disagree.

The following additional facts are relevant to our analysis of the defendant's claim. On March 17, 2009, the defendant appeared in court with his attorney, Walter Bansley III.[2] Shortly after arriving in the courtroom, the defendant stated that Bansley "assaulted me in front of inmates down there, slammed my head up against the wall because I told him I didn't want him to represent me because he is not looking out for my best interests . . . . I want assault charges brought up on him."[3] Bansley requested a competency evaluation of his client but did not respond directly to the defendant's allegations.[4] The court then concluded that "everything has to come to a complete halt until [the defendant's] ability to stand trial has been determined and the issue of his representation as well" and adjourned court.

The following day, the defendant and Bansley appeared in court again. At that time, Bansley represented to the court that he had considered the events of the previous day, discussed the matter with his client

---

[2] Bansley's son, Walter Bansley IV, also was representing the defendant at trial that day. For simplicity, all references to Bansley hereinafter refer to Walter Bansley III.

[3] Although the transcript is not entirely clear, the defendant appears to indicate that he originally was displeased with his attorney's failure to file certain motions on his behalf.

[4] The defendant cites various documents that contain additional information about his altercation with Bansley. There is no indication in the record that these documents were presented to the trial court. Because there is nothing in the record that indicates that the trial court possessed these documents, we decline to consider them.

and believed that he could continue his participation in the case.[5] The defendant then made an affirmative representation to the court that he wanted Bansley to continue representing him.[6] The court then canvassed the defendant regarding this choice.[7]

We begin our analysis of the defendant's claim by setting forth the applicable standard of review. "Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have

[5] Specifically, Bansley stated: "I have given careful consideration to what took place yesterday in court, and I could assure the court and have assured [the defendant] that whatever occurred, I certainly don't have any difficulty and I could represent him just as if that didn't occur. I could certainly place that out of my mind, I don't have any trouble with that."

[6] Indeed, when initially asked by the court whether he desired a new attorney, the defendant responded: "I'm going to put it just like this, Your Honor: I want this Bobby Knight for an attorney." The defendant proffered the following explanation for his analogy: "Bobby is a highly emotional coach in basketball, but he [is] the best at what he do[es]. . . . I compare [Bansley] with [Bobby Knight], but in a different field. He is a highly emotional attorney, he is good, I know he's good, and he will prove me to be innocent, which I am."

[7] Specifically, the following colloquy took place between the trial judge and the defendant:

"The Court: Okay. Now, do you understand, you are making this decision of your own free will?

"The Defendant: I am making this of my own free will.

"The Court: Do you believe that they could give you adequate representation in this case?

"The Defendant: I believe they fully understand me, yeah, I believe they could represent me best.

"The Court: All right. And has anyone put any pressure on you or in any way forced you to make this decision?

"The Defendant: No, Your Honor.

"The Court: You have made this of your own free will?

"The Defendant: I made this of my own free will.

"The Court: Are you prepared to follow their advice with respect to this case?

"The Defendant: Yes. And as well as vice versa."

addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel. . . . We have addressed such claims, moreover, only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. . . . We, therefore, review the defendant's claim as a question of law and, as with all questions of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *State* v. *Parrott*, 262 Conn. 276, 285–86, 811 A.2d 705 (2003).[8]

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel. . . . Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest." (Internal quotation marks omitted.) *State* v. *Cator*, 256 Conn. 785, 793, 781 A.2d 285 (2001). "There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . ." (Internal quotation marks omitted.) Id., 793–94; *State* v. *Thompson*, 118 Conn. App. 140, 146–47, 983

---

[8] The state contends that we should not consider this claim because the record is inadequate for review. Specifically, the state argues that "the record is inadequate for review because the most critical factual determination relied upon by the defendant—whether . . . Bansley assaulted him—requires 'further evidentiary development.' " We disagree. Although the court's decision not to inquire into the altercation necessarily leaves unanswered factual questions, the record contains sufficient evidence for us to determine that such an inquiry was not required.

A.2d 20 (2009), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010).[9]

"In discharging this duty, the trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court. . . . The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." (Internal quotation marks omitted.) *State* v. *Barnes*, 99 Conn. App. 203, 216–17, 913 A.2d 460, cert. denied, 281 Conn. 921, 918 A.2d 272 (2007). Indeed, "[t]rial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. An attorney [facing a possible conflict] in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest *exists or will probably develop in the course of a trial.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 696, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

In *State* v. *Barnes*, supra, 99 Conn. App. 203, the defendant claimed the trial court "violated his right to the effective assistance of counsel . . . by failing to inquire adequately into a claimed conflict of interest . . . between him and his trial counsel when the court knew or should have known about the conflict." Id., 213. In that case, the defendant argued that a conflict of interest was created when he filed a habeas petition claiming that his lawyer had rendered ineffective assistance. Id. Although we noted that the existence of such a collateral proceeding could give rise to a "potential

---

[9] Because no objection was raised at trial, the defendant must demonstrate that the trial court was aware, or reasonably should have been aware, that a conflict existed. *State* v. *Cator*, supra, 256 Conn. 793–94.

conflict," we also recognized that counsel indicated to the trial court that he was able to proceed and that the defendant was asked "whether he wanted defense counsel to continue to represent him, and [he] answered affirmatively . . . ." Id., 219. From these facts, we concluded that the trial court "was not alerted to a potential conflict of interest and, accordingly, did not have a duty to inquire." Id., 221.

In the present case, the trial court was told by the defendant that a physical altercation had taken place between him and Bansley. After this allegation, the trial judge promptly adjourned court. At the outset of proceedings the following day, Bansley made an affirmative representation to the court that he had discussed the incident with his client and could continue his involvement with the case. Counsel made this representation in his capacity as an officer of the court, pursuant to what our Supreme Court has said is an attorney's "ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." (Internal quotation marks omitted.) *State* v. *Crespo*, supra, 246 Conn. 696. Far from objecting, the defendant indicated emphatically that he wanted Bansley to continue serving as his lawyer. Based on these facts, including both Bansley's affirmative representations to the court and the defendant's emphatic statement that he wanted Bansley to continue to represent him, we conclude that the trial court did not know, or have reason to know, that a conflict of interest existed and, accordingly, had no duty to inquire further.[10] See *State* v. *Barnes*, supra, 99 Conn. App. 216–21.

---

[10] Even in the absence of a duty to inquire, a violation of the defendant's sixth amendment right may nonetheless be established if "(1) . . . counsel actively represented conflicting interests and (2) . . . an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *State* v. *Crespo*, supra, 246 Conn. 689. Even if this court were to assume that the defendant could demonstrate the existence of an actual conflict of interest, the evidence contained within the record does

## II

The defendant's second claim is that the court erred in admitting evidence of prior misconduct. Specifically, the defendant argues that evidence pertaining to the defendant's interactions with the victim and her family on April 7, 2007, and April 15, 2007, should not have been admitted because these incidents were dissimilar to the underlying charges and therefore irrelevant. The defendant also argues that the admission of this evidence was unfairly prejudicial. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. On April 7, 2007, the defendant got into a fight with the victim during which he threatened to kill her while holding a "twelve inch steak knife." The police later arrived at the victim's home and discovered the defendant locked in the upstairs bedroom. The defendant unlocked the door and indicated to police that the knife was on a nearby dresser. On April 15, 2007, the defendant again went to the victim's home and threatened her, yelling that he was "going to hunt and kill" her. The defendant objected to the admission of evidence regarding these events, but the court overruled that objection, finding that the evidence was admissible to show intent.

We begin our analysis of the defendant's claim by setting forth the standard of review applicable to evidentiary challenges. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably

not demonstrate that Bansley's performance was affected in any way. Indeed, the defendant was ultimately found not guilty on the charge of murder.

conclude as it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 666–67, 969 A.2d 750 (2009).

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (b) of the Connecticut Code of Evidence]. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 399–400, 963 A.2d 956 (2009). Section 4-5 (b) of the Connecticut Code of Evidence provides, in relevant part: "Evidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

In *State* v. *Beavers*, supra, 290 Conn. 386, the defendant was charged with "arson murder in violation of [General Statutes] § 53a-54d, attempted murder in violation of [General Statutes] §§ 53a-49 and 53a-54a, and

arson in the first degree in violation of [General Statutes] § 53a-111 (a) (1) . . . ." Id., 396. On appeal, the defendant claimed, inter alia, that "the trial court improperly admitted . . . testimony that the defendant . . . had threatened to burn down [the victims'] home." Id., 397. The Supreme Court found this argument to be unpersuasive, concluding "that the uncharged misconduct evidence was relevant both to prove the defendant's intent and to disprove the theory that the fire was accidental." Id., 404.

In the present case, the challenged evidence demonstrates that the defendant had threatened to kill the victim twice in the days immediately preceding her death. Such evidence tends to indicate that the defendant possessed the intent required for conviction of murder and also tends to show that the death of the victim was not the result of an accident as the defendant had claimed at trial.[11] Consequently, we conclude that the court did not err in ruling that this evidence was relevant and fell within the intent exception established in § 4-5 (b) of the Connecticut Code of Evidence.[12]

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be

---

[11] The defendant originally was charged with one count of murder in violation of § 53a-54a. Conviction of this charge requires proof of specific intent. *State* v. *Bharrat*, 129 Conn. App. 1, 7, 20 A.3d 9, cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011).

[12] In reaching this conclusion, we note that although the prior acts of misconduct did not involve the use of physical force, this difference is inapposite to our analysis. *State* v. *Pereira*, 113 Conn. App. 705, 714, 967 A.2d 121 ("[t]his court has held that [t]he high degree of similarity required for admissibility on the issue of identity is not required for misconduct evidence to be admissible on the issue of intent" [internal quotation marks omitted]), cert. denied, 292 Conn. 909, 973 A.2d 106 (2009).

admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 675–76, 22 A.3d 611 (2011).

This court consistently has declined to conclude that the admission of evidence was unduly prejudicial when the prior acts of misconduct were substantially less shocking than the crimes charged. See *State* v. *Pereira*, 113 Conn. App. 705, 716, 967 A.2d 121 ("defendant's act of threatening the victim and her friend and punching the friend on May 17, 2006, was a less serious matter than the act of holding the child and the knife and threatening to kill himself and the child"), cert. denied, 292 Conn. 909, 973 A.2d 106 (2009); *State* v. *Epps*, 105 Conn. App. 84, 94, 936 A.2d 701 (2007) (prior uncharged misconduct was not unduly prejudicial when uncharged misconduct not as brutal as conduct for which defendant charged), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008); *State* v. *Irizarry*, 95 Conn. App. 224, 238, 896 A.2d 828 ("the misconduct evidence in this case was no more shocking than the evidence of the crimes with which the defendant was charged"), cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). In the present case, the events of April 7, 2007, and April 15, 2007,

although serious in their own respect, are substantially less egregious than the acts underlying the charge of murder.

Moreover, the court gave a detailed instruction to the jury limiting the impact of this evidence.[13] The issuance of these instructions mitigates any prejudicial effect that this evidence may have had. See *State* v. *James G.*, 268 Conn. 382, 397–98, 844 A.2d 810 (2004) (limiting instructions on uncharged misconduct evidence "serve to minimize any prejudicial effect that such evidence otherwise may have had" [internal quotation marks omitted]). "[I]n the absence of evidence to the contrary, we presume that the jury properly followed those instructions." (Internal quotation marks

---

[13] The trial court instructed the jury on the use of prior misconduct evidence as follows: "[T]he state has offered evidence of other acts of misconduct of the defendant, that is, you heard testimony concerning things that took place on April 7, [2007] and also what took place . . . on April 15, [2007]. This testimony is not being admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts. Such evidence is being admitted solely to show or establish:

"First, the defendant's alleged intent.

"Second, an alleged motive for the commission of the crimes alleged.

"And third, an alleged absence of mistake or accident on the part of the defendant.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity.

"You may consider such evidence, if you believe it, and further find that it logically, rationally, and conclusively supports the issues . . . for which it is being offered by the state, but only as it may bear on the issues which I have just stated, that is, intent, motive and absence of mistake or accident on the part of the defendant.

"On the other hand, if you do not believe such evidence or even if you do, if you find that it does not logically, rationally, and conclusively support the issues for which it is being offered by the state, namely, the above three reasons, then you may not consider that testimony for any purpose.

"You may not consider evidence of other misconduct of the defendant for any purpose other than the ones I have just told you because it may predispose your mind uncritically to believe that the defendant may be guilty of the offense here charged, merely because of the other alleged misconduct. For this reason, you may consider this evidence only on the issues of the above three reasons and for no other purpose."

omitted.) Id., 398. We conclude that the trial court did not abuse its discretion by concluding that this evidence was not unduly prejudicial to the defendant.

### III

The defendant's third claim is that the court erred in denying his motion to sever the charges of violating a protective order and threatening in the second degree. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. The defendant originally was charged with (1) one count of murder, (2) one count of violating a protective order, (3) one count of robbery in the first degree, (4) one count of attempt to commit robbery in the first degree and (5) one count of threatening in the second degree. On March 3, 2009, the defendant filed a motion to sever the charges of violating a protective order and threatening. Specifically, the defendant argued that "[c]ounts [o]ne, [t]hree and [f]our of the [i]nformation are based upon allegations from an April 18, 2007 incident where the [d]efendant is accused of stabbing [the victim] in front of their home, ultimately killing her, and his subsequent actions. Counts [t]wo and [f]ive of the [i]nformation are based upon allegations from an April 15, 2007 incident, where the [d]efendant is accused of making threatening remarks to his girlfriend from outside the home, ultimately resulting in the issuance of a [p]rotective [o]rder." The court subsequently ruled that the events of April 15, 2007, were admissible and denied the defendant's motion to sever. On March 16, 2009, the defendant entered an *Alford* plea to the charge of violating a protective order.

"General Statutes § 54-57 and Practice Book § 41-19 permit a trial court to join similar charges in pending cases against a common defendant. Our prior decisions

have made clear that the trial court enjoys broad discretion in this respect and that its decision to consolidate will not be disturbed in the absence of manifest abuse of that discretion. . . . [T]his court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . [we] will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges. . . . On appeal, [t]he defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Gupta*, 297 Conn. 211, 222–23, 998 A.2d 1085 (2010).

"Where evidence of one incident can be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . We consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been cross admissible at separate trials." (Internal quotation marks omitted.) *State* v. *Carrion*, 128 Conn. App. 46, 55, 16 A.3d 1232 (2011).

We previously have concluded that the evidence presented by the state regarding the events of April 15, 2007, was admissible to show intent and to disprove the defendant's theory that the victim's death was accidental. Because this evidence was admissible in both cases, we conclude that no substantial injustice was caused by the joinder of these charges.[14] Accordingly,

---

[14] The defendant also argues that he suffered prejudice because of "the fact that he was charged with violating a protective order stuck in the jurors' minds." Although the jury was made aware of this charge before the defendant entered his plea under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), we conclude that the defendant suffered

the court did not abuse its discretion in denying the defendant's motion to sever.

The judgment is affirmed.

In this opinion the other judges concurred.

no prejudice because the court specifically instructed the jury to disregard the existence of a protective order in its deliberations. Absent evidence to the contrary, we assume the jury followed those instructions. See *State* v. *James G.*, supra, 268 Conn. 398.